# In the United States District Court
# for the Southern District of Georgia
# Augusta Division

| | | |
|---|---|---|
| GRAYBAR ELECTRIC CO., INC., | * | |
| Plaintiff, | * | |
| vs. | * | CV 112-190 |
| ALL AMERICAN ELECTRICAL SERVICES, LLC and MICHAEL W. BROWN, | * | |
| Defendants. | * | |

## ORDER

Presently before the Court are Plaintiff's Motion for Default Judgment and Plaintiff's Motion for Summary Judgment. See Dkt. Nos. 12, 24. Upon due consideration, Plaintiff's motions are **GRANTED**.

I. **FACTUAL BACKGROUND**

This action is predicated on an alleged breach of contract. See Dkt. No. 1. Specifically, Plaintiff filed suit to recover damages related to unpaid invoices, charges related to checks written on insufficient funds, and collection costs and attorney's fees. Id.

1

The material facts are largely undisputed. See Dkt. Nos. 24-1, 26.[1] On February 22, 2009, Defendant All American Electrical Services, LLC ("All American") executed a contract for a credit on account ("Agreement") with Plaintiff. Dkt. No. 24-1 ¶ 1. The Agreement provided that Defendant All American would pay Plaintiff's Terms of Sale. Id. ¶ 2. The Terms of Sale stated that invoices were due net thirty (30) days, monthly service charges of the lesser of one and on half percent (1.5%) or the maximum permitted by law could be added to all accounts not paid when due, and all obligations—including service charges, collections expenses, and attorney's fees—were to be paid promptly and in full. Id. ¶ 3.

Defendant Brown executed a Personal Guaranty ("Guaranty"), guarantying full payment and satisfaction of all of Defendant All American's obligations to Plaintiff. Id. ¶ 4; Dkt. No. 24-4. The Guaranty contained the following language:

> In order to induce Graybar Electric Company, Inc. to extend credit to ALL AMERICAN ELECTRICAL SERVICES, The undersigned does hereby absolutely, unconditionally and personally guarantee to the Graybar Electric

---

[1] Pursuant to Federal Rule of Civil Procedure 56(e) and Local Rule 56.1, all material facts not specifically controverted by specific citation to the record are deemed admitted, unless otherwise inappropriate.

> Co., Inc., the payment of all indebtedness
> and obligations existing on the date of this
> instrument or are incurred after such date.

Dkt. No. 24-4. Other than Plaintiff All American's name, all portions of this language were part of a typed form. See id. Plaintiff All American's name was written into the blank provided on the form. Id. Defendant Brown signed and printed his name in the appropriate fields under this language of the Guaranty. Dkt. No. 29-1.

Plaintiff provided goods to Defendant All American pursuant to the terms of the Agreement. Dkt. No. 24-1 ¶ 1. Defendant All American failed to pay Plaintiff for such goods. Id. ¶ 5.

On October 18, 2011 and November 17, 2011, Defendant All American tendered checks to Plaintiff. Id. ¶¶ 7-8. These checks were in the amounts of $10,000 and $15,000, respectively. Id. ¶ 9. On October 21, 2011 and December 1, 2011, respectively, the bank returned the checks for insufficient funds. Id. ¶¶ 7-8.

On March 22, 2012, Plaintiff sent a letter notifying Defendants of their default and demanding full payment of the amounts due under the Agreement and Guaranty. Dkt. No. 24-7. The letter informed Defendants of Plaintiff's intent to enforce the Agreement's collection expenses and attorney's fee provision

pursuant to O.C.G.A. § 13-1-11. Id. That same day, Plaintiff sent a letter notifying Defendant All American that the bank returned its checks for insufficient funds and demanding payment of the checks' face values plus statutory service fees. Dkt. No. 24-9. On April 24, 2012, Plaintiff sent a similar demand letter to Defendant Brown. Dkt. No. 24-10.

Defendants are in default under their obligations. Dkt. No. 24-1 ¶ 15. As of December 19, 2012, the total amount due and owing to Plaintiff was $140,368.42. Id. ¶ 29. Interest accrued at a rate of $53.63 per day. Id.

## II. PROCEDURAL BACKGROUND

Plaintiff filed suit on May 29, 2012. Dkt. No. 1. Defendant All American failed to answer the Complaint. Consequently, Plaintiff moved for default judgment on all claims against Defendant All American. See Dkt. No. 12.

After discovery closed, Plaintiff moved for summary judgment as to all claims against Defendant Brown. See Dkt. No. 24.

## III. LEGAL STANDARD

A. Default Judgment

A district court may enter a default judgment when a party fails to appropriately respond in a timely manner. Before entering a default judgment for damages, the court "must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." Tyco Fire & Sec., LLC v. Alcocer, 2007 WL 542583, at *2 (11th Cir. Feb. 22, 2007); see also Cotton v. Mass. Mut. Life Ins. Co., 402 F.3d 1267, 1277-78 (11th Cir. 2005).

The plaintiff's evidentiary burden is light. He need only establish a prima facie case against the defendant. See Pitts ex rel. Pitts v. Seneca Sports, Inc., 321 F. Supp. 2d 1353, 1357 (S.D. Ga. 2004). "A motion for judgment by default is not granted as a matter of right. Rather, the court in its discretion may conduct a hearing requiring some proof from the [p]laintiff of the facts that must be established in order to determine [the defendant's] liability." In re Thanh v. Truong, 271 B.R. 738, 742 (Bankr. D.Conn. 2002); see also Tara Prods.,

AO 72A
(Rev. 8/82)

Inc. v. Hollywood Gadgets, Inc., 449 F. App'x 908, 911-12 (11th Cir. 2011) (per curiam) ("Under Rule 55(b), the district court 'may conduct hearings . . . when, to enter or effectuate [a default] judgment, it needs to: . . . determine the amount of damages.' . . . [T]he decision to hold an evidentiary hearing [is left] to the court's discretion" (internal citation omitted)).

B. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Investor Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute over such a fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In making this determination, the court is to view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Johnson v. Booker T.

6

AO 72A
(Rev. 8/82)

Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To satisfy this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case. Id. at 325. If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257.

**III. DISCUSSION**

A. Defendant All American

Plaintiff moved for default judgment against Defendant All American. See Dkt. No. 12. In considering any default judgment, the Court must examine (1) jurisdiction, (2) liability, and (3) damages. See Pitts, 321 F. Supp. 2d at 1356.

The Court is satisfied that it has personal and subject-matter jurisdiction, as established by the Complaint. Dkt. No. 1 ¶¶ 1-3. Furthermore, information presented at the Court's

7

December 19, 2012 hearing confirmed that the Court has personal jurisdiction over Defendant All American due to the fact that it is a Georgia corporation whose principal place of business is in Appling, Georgia.[2] Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332.

Information presented at the Court's December 19, 2012 hearing confirmed that Defendant All American was properly served with process. Specifically, service of process was achieved through personal service on Defendant All American's registered agent. Dkt. No. 7.

Liability has also been established, as the admission to the facts set forth in the Complaint constitutes a breach of contract by Defendant All American. Admission to the facts set forth in the Complaint also establishes Defendant All American's liability for statutory charges resulting from its tendering checks drawn on insufficient funds and for costs and attorney's fees associated with collecting the debt.

Finally, the Court is satisfied that the allegations set forth in the Complaint and the evidence presented to the Court

---

[2] The proper division is the Augusta division rather than the Brunswick division. Accordingly, the Court transferred the case to the Augusta division. See Dkt. No. 24.

8

at the hearing adequately demonstrate Plaintiff's damages. Specifically, evidence submitted establishes that—as of December 19, 2012—Plaintiff is owed $140,368.42 for unpaid past principal, unpaid interest on the principal, late fees, service charges on the checks drawn on insufficient funds, and collection costs and reasonable attorney's fees pursuant to O.C.G.A. § 13-1-11.

Default judgment is, therefore, appropriately entered against Defendant All American pursuant to Federal Rule of Civil Procedure 55(b).

B. Defendant Brown

Plaintiff moved for summary judgment against Defendant Brown. See Dkt. No. 24. Defendant Brown filed no response brief. However, he did file a Statement of Material Facts Opposing Plaintiff's Motion for Summary Judgment. See No. 2:12cv106, Dkt. No. 26 (duplicated at Dkt. No. 40). For the reasons stated below, Plaintiff is entitled to summary judgment as a matter of law.

9

1. Guaranty

By executing the Guaranty, Defendant Brown became liable to Plaintiff for all debts incurred by Defendant All American under the Agreement.

In his deposition Defendant Brown asserted that he was "fraudulently" induced to sign the Guaranty. See Dkt. No. 29-1; see also Dkt. No. 26 ¶ 2. Specifically, Defendant Brown asserted that—prior to signing the Guaranty—Defendant All American's owner and Plaintiff's employee informed Defendant Brown that his exposure under the Guaranty would be no more than $10,000. See Dkt. No. 29-1 at 16-17.

"It is the duty of contracting parties to inform themselves with reference to the subject matter about which they desire to contract; if they fail to do so and a mistake is made owing to their own ignorance and failure to inform themselves, then any injury results from their own conduct." Fore v. Parnell-Martin Cos., Inc., 386 S.E.2d 723, 724 (Ga. Ct. App. 1989) (citations omitted). "Relief is not available on the basis of a unilateral mistake in the absence of fraud or inequitable conduct or other special circumstances." Fore, 386 S.E.2d at 724 (citations omitted); see also Clement Plumbing & Elec. Co., Inc. v. Goodwin, 202 S.E.2d 684, 686 (Ga. Ct. App. 1973). "[S]uch

10

relief is decisively unavailable to [the contracting party] if the misunderstanding is the result of his own fault or negligence." Id. at 686; see also Hall v. World Omni Leasing, Inc., 433 S.E.2d 297, 299 (Ga. Ct. App. 1993) ("Where one who can read signs a contract without apprising himself of its contents, otherwise than accepting representations made by the opposite party . . ., he can not [sic] defend an action based on it . . . on the ground that it does not contain the contract actually made, unless it should appear that at the time he signed it some such emergency existed as would excuse his failure to read it, or that his failure to read it was brought about by . . . actual fraud as would reasonably prevent him from reading it." (citations omitted)).

Here, there is no question that the Guaranty was unambiguous, explicit, and unconditional as to its material terms at the time that Defendant Brown executed it. All indications are that Defendant Brown could read. See Dkt. No. 29-1, at 19 (recording Defendant Brown reading portions of Guaranty and Terms of Sale aloud). Moreover, Defendant Brown had an opportunity to read the Guaranty. Id. at 22. He simply failed to do so. Id. He also failed to modify the terms of the Guaranty to limit his exposure to $10,000. Id. at 22-23.

11

By signing the Guaranty, Defendant Brown bound himself to its terms. Defendant Brown had a duty to inform himself of the legal significance of his signature. He is responsible for his decision not to read the Guaranty before signing it. Any mistake as to the terms of the Guaranty was his own fault. Under these circumstances, the Court will not relieve Defendant Brown of his contractual obligations under the Guaranty. See Goodwin, 202 S.E.2d at 686 ("If by negligence one voluntarily remains ignorant of a fact materially affecting his interest and subsequently loses a right or property, he should not expect a court of equity to do that for him which he refused to do for himself." (citing McCullough v. Kerby, 51 S.E.2d 812, 816 (Ga. 1949)).

In his deposition Defendant Brown also asserted that the fields on the Guaranty were blank when he signed it. See Dkt. No. 29-1; see also Dkt. No. 26 ¶ 3. Specifically, Defendant Brown asserted that the Signature and Title fields under "Terms of Sale" were filled in by an unknown person after he signed the Guaranty. See id.

"If a writing is signed with blanks left to be filled in by the other party, the person signing is bound by it." Fore, 386

AO 72A
(Rev. 8/82)

at 725 (citations omitted); see also Hall, 433 S.E.2d at 298. Consequently, it is immaterial when the fields were completed.

The Guaranty is a form document. See Dkt. No. 24-4. There is only one blank in the "Personal Guaranty" portion of the document. See id. That blank refers to the third-party who receives credit in exchange for Defendant Brown's guaranty of her debts. In that blank, someone wrote in the words "All American Electrical Services." The portion of the contract which described the liability of the guarantor clearly and explicitly stated that Defendant Brown "absolutely, unconditionally and personally guarantee[d] to [Plaintiff] the payment of all indebtedness and obligations existing . . . or . . . incurred after" the date of signing. Id. Therefore, all material terms of the Guaranty were present when Defendant Brown signed his name. See Fore, 386 S.E.2d at 725. Moreover, at the time that he executed the Guaranty, Defendant Brown knew that he was guarantying the debt of Defendant All American. See Dkt. No. 29-1. Thus, even assuming that the words "All American Electrical Services" were written onto the form agreement after Defendant Brown executed the Guaranty, Defendant Brown is bound by the terms of the Guaranty. See Fore, 386 S.E.2d at 725.

Moreover, Defendant Brown refered to blanks in the "Terms of Sale" portion of the form document. Defendant Brown did not need to agree to those terms for his personal guaranty to be effective. Consequently, because Defendant Brown executed the Guaranty as the guarantor of Defendant All American's debts to Plaintiff and because there were no material alterations of the Guaranty after Defendant Brown executed it, Defendant Brown is bound by the terms of the Guaranty.

2. Goods Delivered

Plaintiff seeks payment for goods delivered on an open credit account. "A supplier seeking recovery on an open account establishes a prima facie case by tendering an authenticated invoice and demonstrating that goods were delivered, but that the invoice remains unpaid." Traditional Props., Inc. v. Performance Food Grp. of Ga., LLC, 662 S.E.2d 250, 251-52 (Ga. Ct. App. 2008) (citations omitted). "At that point, the buyer has 'the burden of presenting evidence of specific facts to refute [the supplier's] proof.'" Id. at 252 (quoting Sweet Water Tree Farm, Inc. v. J. Frank Schmidt & Son, Inc., 651 S.E.2d 787 (Ga. Ct. App. 2007)) (alteration in original). "A general denial is not sufficient; the buyer must offer specific

14

factual evidence creating a genuine issue for the jury." Id. (citation and internal quotation marks omitted).

To support its claim, Plaintiff provided evidence of unpaid invoices. See Dkt. Nos. 24-3, 24-5, 24-6. This evidence establishes Plaintiff's prima facie case. Defendant Brown provided no evidence disputing the amount of these invoices. Dkt. No. 24-1 ¶ 11. Moreover, Defendant Brown provided no evidence that the invoices were paid. Id. ¶ 12. Consequently, Defendant Brown is liable for the amounts shown on the unpaid invoices.

Defendant Brown asserts that Plaintiff stated "that all bills owed by [Defendant All American] to [Plaintiff] had been paid in full." See Dkt. No. 26 ¶ 4 (citing Dkt. No. 29-1, Ex. D-1). However, the referenced document states, "[Plaintiff] hereby releases and forever discharges White Hawk/Todd . . . from any and all claims, demands and liens of every kind and character whatsoever . . . ." Dkt. No. 29-1, Ex. D-1. Defendant Brown fails to show how this document—which specifically references White Hawk/Todd—relates to Defendant Brown or Defendant All American. Without some indication as to how this purported release relates to Defendants' obligations,

15

the Court finds no issue of material fact as to the extent of Defendants' debt.

Defendant Brown also asserts that Plaintiff told Defendant All American "that $17,624.00 was owed to [Plaintiff] for a final lien waiver." See Dkt. No. 26 ¶ 5 and Ex. A. Defendant Brown refers the Court to several e-mails between employees of Plaintiff and Defendant All American. Dkt. No. 26, Ex. A. At best, these e-mails indicate that money on project "25719" was due and owing. These e-mails do no indicate that the owed money was paid. Nor do they indicate that this was the total outstanding debt. Without some indication that this was the only remaining debt and that this debt was paid and not reflected on the invoices supplied by Plaintiff, the Court finds no issue of material fact as to the extent of Defendants' debt.

3. Bad Checks

Defendant All American delivered two (2) bad checks to Plaintiff. See Dkt. No. 24-8. Plaintiff seeks payment and statutory charges related to these checks. O.C.G.A. § 13-6-15(a) provides, in relevant part:

> [A]ny person who makes, utters, draws, or delivers any check . . . upon any bank, depository, person, firm, or corporation for the payment of money, which drawee refuses

16

> to honor the instrument for lack of funds or credit in the account from which to pay the instrument . . ., and who fails to pay the same amount in cash to the payee named in the instrument within ten days after a written demand therefor[e], . . . shall be liable to the payee, in addition to the amount owing upon such check . . . for damages of double the amount so owing, but in no case more than $500.00, and any court costs incurred by the payee in taking the action.

Pursuant to O.C.G.A. 13-6-15, Plaintiff demanded payment from Defendants. <u>See</u> Dkt. Nos. 24-9, 24-10. There is no evidence that either Defendant fulfilled the demand within ten (10) days. Consequently, Plaintiff is entitled to payment pursuant to O.C.G.A. § 13-6-15.

4. Attorney's Fees

Plaintiff's evidence shows that it is entitled to attorney's fees pursuant to O.C.G.A. § 13-1-11(a), which provides:

> Obligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, shall be valid and enforceable and collectable as a part of such debt if such note or other evidence of indebtedness is collected by or through an attorney after maturity, subject to the following provisions: . . .

17

> (2) If such note or other evidence of indebtedness provides for the payment of reasonable attorney's fees without specifying any specific percent, such provision shall be construed to mean 15 percent of the first $500.00 of principal and interest owing on such note or other evidence of indebtedness and 10 percent of the amount of principal and interest owing thereon in excess of $500.00.

Plaintiff established that the Agreement provides for the payment of reasonable attorney's fees. Dkt. No. 29-1 ¶ 25. The Agreement does not specify the percent of the debt that is used to calculate the fees. Consequently, Defendants owe fees according to the formula provided in O.C.G.A. § 13-1-11(a)(2).

5. Unsigned Deposition

Defendant Brown asserts that he "has not read and signed his deposition as required by Federal Rule of Civil Procedure 30(e)(1)." Dkt. No. 26 ¶ 1. However, Defendant Brown had thirty (30) days to read and sign his deposition. See Dkt. No. 30 ¶ 3. He simply failed to do so. Consequently, Defendant Brown's responses in his deposition are effective for all purposes under the Federal Rules of Civil Procedure.

AO 72A
(Rev. 8/82)

## IV. CONCLUSION

Plaintiff's Motion for Default Judgment is **GRANTED**. Dkt. No. 12. Moreover, Plaintiff's Motion for Summary Judgment is **GRANTED**. Dkt. No. 24.

The Clerk of Court is directed to close the case and enter a final judgment in favor of Plaintiff against Defendants in the amount of $146,941.34. See Dkt. No. 37.

**SO ORDERED**, this 8th day of March, 2013.

_____
LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

19